**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:                                    **Case No.: 6:23-bk-01675-TPG**
                                          **Chapter 11**
**VALCAL INC.,**                          **Subchapter V**
                                          **EIN: 85-1773435**

        Debtor.
_____/

### PLAN OF REORGANIZATION
### <u>SUBMITTED BY VALCAL INC</u>.

**COUNSEL FOR DEBTOR**

Jeffrey S. Ainsworth, Esquire
Florida Bar No.: 0060769
E-mail: *jeff@bransonlaw.com*
Jacob D. Flentke, Esquire, of Counsel
Florida Bar No.: 25482
E-mail: *jacob@bransonlaw.com*
**BransonLaw, PLLC**
1501 East Concord Street
Orlando, Florida 32803
Telephone: (407) 894-6834
Facsimile: (407) 894-8559

**July 31, 2023**

## INTRODUCTION

**VALCAL INC.** proposes the following plan of reorganization (the "**Plan**") pursuant to subchapter V of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I of the Plan. Debtor, VALCAL INC., is the proponent of the Plan (the "**Plan Proponent**") within the meaning of section 1129 of the Bankruptcy Code.

This Plan provides for: 23 classes of secured claims; 1 class of unsecured claims; and 1 class of equity security holders.

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1193 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3019, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

### A. DESCRIPTION AND A BRIEF HISTORY OF THE BUSIENSS OPERATIONS OF THE DEBTOR

Debtor is a Florida profit corporation organized by Articles of Incorporation filed with the Florida Secretary of State on June 25, 2020. The Debtor manages and operates two (2) delivery routes for FedEx Ground ("FedEx"). One of the routes is in Jacksonville, Florida; and the other is near Ocoee, Florida. On the Petition Date, the Debtor had twenty-three (23) active employees, not including the officers and insiders. The Debtor's annual gross receipts were as follows: (i) 2021 - $1,112,447.00; (ii) 2022 - $3,247,970.47; (iii) 2023 to date- $848,096.30.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached as **Exhibit A**. Based upon the Liquidation Analysis, in a hypothetical Chapter 7 case, non-priority unsecured creditors would receive a distribution valued at zero (0) cents on the dollar.

### C. Projections with Respect to the Ability to Make Payments under the Plan

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Plan Proponent has provided projected financial information as **Exhibit B**.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THE PLAN CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY AND ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE**

# ARTICLE I – DEFINITIONS – INTERPRETATION

**A.**    **Definitions**

For purposes of this Plan, the following definitions shall apply unless the context clearly requires otherwise:

**Administrative Claim** shall mean any Claim for the payment of an Administrative Expense.

**Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 Case that is allowed under §§ 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, request, or motion seeking such cost or expense in the Chapter 11 Case on or before the applicable Administrative Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the estate or operating the business of the Debtor in Possession (including wages, salaries, or commissions for services rendered) incurred after the Petition Date, (ii) any post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession in the ordinary course of its business, (iii) any claim granted administrative priority status by a Final Order of the Bankruptcy Court, and (iv) compensation or reimbursement of expenses of professionals awarded or Allowed pursuant to an order of the Bankruptcy Court under §330(a) or 331 of the Bankruptcy Code, 28 U.S.C. §§ 1911-30; and (v) any and all other costs or expenses of administration of the Chapter 11 Case that are Allowed by a Final Order of the Bankruptcy Court; provided, however, that notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any transferred claim, any Disallowed Claim, or unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 4.

**Allegiant** shall mean Allegiant Partners, Inc.

**Allegiant Collateral (8553)** shall mean that certain 2021 Ford Cutaway E450, VIN#1FDXE4FN0MDC36121.

**Allegiant Collateral (8554)** shall mean that certain 2021 Ford Cutaway E450, VIN#1FDXE4FN2NDC01548.

**Allegiant Collateral (8399)** shall mean that certain 2022 Ford Cutaway E450, VIN#1FDXE4FNXN0C13916.

**Allegiant Collateral (7877)** shall mean that certain 2021 Ford P1000, VIN: 1F65F5KNXM0A09680.

**Allegiant Collateral (7579)** shall mean that certain 2021 Ford P1000, VIN: 1F65F5KNXM0A09663.

**Allowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest (a) proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (i)

as to which no objection has been filed by the Objection Deadline, unless such Claim or Interest is to be determined in a forum other than the Bankruptcy Court, in which case such Claim or Interest shall not become allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or (ii) as to which an objection was filed by the Objection Deadline, to the extent Allowed by a Final Order; (b) Allowed by a Final Order; or (c) listed in the Debtor's schedules filed in connection with this Chapter 11 Case and not identified as contingent, unliquidated, or disputed.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Priority Tax Claim** shall mean a Priority Claim pursuant to U.S.C. § 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Ascentium** shall mean Ascentium Capital, LLC.

**Ascentium Collateral (1380)** shall mean Ground cloud cameras.

**Ascentium Collateral (9886)** shall mean handheld Xebra scanners.

**Bankruptcy Code** shall mean 11 U.S.C. §101 *et seq*., and any amendments thereto.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, and any Bankruptcy Court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom.

**Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), as amended, and as supplemented by the Local Rules of Practice and Procedure of the Bankruptcy Court, as amended ("The Local Rules").

**Bar Date** shall mean either July 11, 2023 for non-governmental units or 180 days from the Petition Date, for governmental units, the dates fixed by order of the Bankruptcy Court by which proofs of Claim or Interest must be filed against the Debtor.

**Bush** shall mean Bush Truck Leasing.

**Bush Collateral (6646)** shall mean that certain 2022 Freightliner P1200, VIN: 4UZAC3GA3NCNP6646.

**Bush Collateral (9636)** shall mean that certain 2022 Freightliner P1200, VIN: 4UZAC3GA8NCNM9636.

**Bush Collateral (9638)** shall mean that certain 2022 Freightliner P1200, VIN: 4UZAC3GA1NCNM9638.

**Bush Collateral (9637)** shall mean that certain 2022 Freightliner P1200, VIN: 4UZAC3GAXNCNM9637.

**Bush Collateral (6645)** shall mean that certain 2022 Freightliner R1200, VIN: 4UZAC3GAINCNP6645.

**Business Day** shall mean any day except Saturday, Sunday, or any legal holiday.

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits or other similar items.

**Causes of Acton** shall mean the following actions and causes of action and the proceeds thereof, whether or not commenced as of the date hereof, all of which shall be vested in the Debtor: (a) all proceedings, commenced or to be commenced pursuant to Bankruptcy Code § 502 and §§ 544-551 (or equivalent provisions of applicable non-bankruptcy law); and (b) all claims against Creditors or Holders of Interests, parties having dealings, relationships, or transactions with or related to the Debtor, and any party named or identified in the Debtor's schedules, statement of financial affairs, or any pleadings filed in this Chapter 11 case; and (c) the Debtor's right of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity and any other indirect claim of any kind whatsoever.

**Channel Partners** shall mean Channel Partners Capital, LLC.

**Channel Partners Collateral** shall mean that certain 2015 Ford F750, VIN: 3FRNF7FA6FV745724.

**Chapter 11 Case** shall mean the Chapter 11 reorganization case of the Debtor pending in the Bankruptcy Court, specifically Case No. 6:23-bk-01675-TPG under the caption *In re VALCAL, Inc.*

**Claims Objection Bar Date** shall mean the date by which objections to Claims and Interests must be filed with the Bankruptcy Court; to wit, 60 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**Class** shall mean a group of Claims or Interests substantially similar to each other as classified under this Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.* shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereto.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to § 1191 of the Code.

**Confirmation Date** shall mean the date the Confirmation Order becomes final and non-appealable.

**Confirmation Hearing** shall mean the hearing set by the Bankruptcy Court for the hearing on confirmation of the Debtor's Plan.

**Confirmation Order** shall mean the order entered by the Bankruptcy Court confirming the Plan.

**Consensual Plan** shall mean a plan as to which each Class of Claims has voted to accept the plan. Whether a Class of Claims has voted to accept a plan shall be determined in accordance with Section 1126 of the Bankruptcy Code (requiring at least two-thirds in amount and at least half in number of the Allowed Claims in such Class).

**Credibly** shall mean Credibly of Arizona, LLC.

**Credibly Collateral** shall mean all tangible and intangible property of the Debtor, not including amounts in bank accounts and motor vehicles.

**Debtor** shall mean VALCAL, Inc.

**Debtor-in-Possession** shall mean VALCAL, Inc., as Debtor-in-possession in this Chapter 11 Case.

**Disallowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest to the extent fourteen (14) days have expired since the Claim or Interest was disallowed by order of the Bankruptcy Court, unless proper application for a stay of such order has been made within such fourteen (14) day period and granted, in which case the Claim or Interest shall be disallowed thirty (30) days after entry of the order disallowing such Claim or Interest, unless prior to the expiration of such period, a stay is obtained with respect to the order disallowing the Claim or Interest.

**Disposable Income** shall mean the income that is received by the Debtor and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor. Disposable Income does not include the WCR.

**Disputed Claim** shall mean any Claim other than a Disallowed Claim that has not been Allowed by an order of the Bankruptcy Court and as to which (a) a Proof of Claim has been filed with the Bankruptcy Court or is deemed filed under applicable law or order of the

Bankruptcy Court, and (b) an objection has been or may be timely filed or deemed filed under applicable law and any such objection has not been: (i) withdrawn; (ii) overruled or denied by an order of the Bankruptcy Court; or (iii) granted by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall also mean a Claim that has not been Allowed by an order of the Bankruptcy Court, whether or not an objection has been or may be timely filed, if (a) the amount of Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Debtor's schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Debtor's schedules or set forth in the Plan, (c) any corresponding Claim has been scheduled in the Debtor's schedules as disputed, contingent, or unliquidated, (d) no corresponding Claim has been scheduled in the Debtor's schedules, or (e) such claim is reflected as unliquidated or contingent in the Proof of Claim filed with respect thereof. To the extent an objection relates to the allowance of only a part of the Claim, such Claim shall be a Disputed Claim only to the extent of the objection. To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Debtor's schedules, such Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled.

**Distribution** shall mean the Distribution to the holders of Allowed Claims.

**Distribution Date** when used with respect to each Claim or Interest shall mean the date on which distributions to the Holder of the Claim will be made in accordance with the Plan.

**Effective Date** shall mean the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**Equity Interest** shall mean the interests in the Debtor held by Holders of existing common stock, including any and all options, warrants, or similar instruments for the acquisition of shares of existing common stock of the Debtor.

**Final Order** shall mean (a) an order, judgment, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Chapter 11 Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and to which (i) no appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has been taken and is pending and the time for filing such appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

**Financial Pacific** shall mean Financial Pacific Leasing, Inc.

**Financial Pacific Collateral (7-302)** shall mean that certain 2021 Ford P1000, VIN:1F65F5KNZMOA10869.

**Financial Pacific Collateral (7-301)** shall mean that certain 2006 Freightliner P1200, VIN: 4UZAARBW76CW98861.

**Fiscal Year** shall mean the fiscal year of the Debtor, which commences on the first day of January and concludes on the final day of December in that same calendar year.

**Governmental Authority** shall mean any agency, board, executive, court, commission, department, legislature, tribunal, instrumentality or administration of the United States, a foreign country or the State of Florida or any other State, provincial, territorial, municipal, local or other governmental entity in the United States or the Public Utilities Commission of any State or a foreign country.

**Holder** shall mean (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as shown on the schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has transferred the Claim to a third party and advised the Debtor or the Reorganized Debtor in writing of such transfer and provided sufficient written evidence of such transfer, the transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the stock register maintained by the Debtor or the Transfer Agent or as otherwise determined by the Bankruptcy Court.

**Impaired** shall mean, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, or other equity instruments in the Debtor.

**Leaf** shall mean Leaf Capital Funding, LLC.

**Leaf Collateral** shall mean that certain 2023 Ford E350, VIN: 1FDWE3FKXPDD16865.

**Liabilities** shall mean any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due, payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen and unforeseen, in law, equity or otherwise, of or relating to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating

to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, of any assets of the Debtor, the business or operations of the Debtor, the Chapter 11 Case, or the Plan, including any liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtor or any other party with standing to bring such a challenge.

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Nonconsensual Plan** shall mean a plan that meets all applicable requirements in § 1129(a) of the Bankruptcy Code are met, except for those in paragraphs (8), (10), and (15), and at least one Class of Claims has submitted ballots voting to reject the plan, as determined in accordance with Section 1126 of the Bankruptcy Code.

**North Mill** shall mean North Mill Credit Trust.

**North Mill Collateral** shall mean that certain 2014 Freightliner P1200, VIN: 4UZAAPDU8ECFP2252.

**Oakmont** shall mean Oakmont Capital Services.

**Oakmont Collateral (1049)** shall mean that certain 2005 Freightliner MT45, P1200, VIN: 4UZAAPBW15CV02383; that certain 2011 Freightliner MT55, P1100, VIN: 4UZAAPDU4BCAY0653; and that certain 2013 Ford P1000, VIN: 1F66F5KY5DOAO4742.

**Oakmont Collateral (8629)** shall mean that certain 2023 Ford Cutaway, VIN: 1FDWE3FKXP0016865.

**Objection Deadline** shall mean the date by which objections to Claims and Interests must be filed with the Bankruptcy Court; to wit, 60 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtor; provided, however, that any due and unpaid post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

**Petition Date** shall mean May 2, 2023, the date on which the petition for relief was filed in the Debtor's Chapter 11 Case.

**Plan** shall mean this chapter 11 Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Bankruptcy Code.

**Plan Payment** shall mean payments made by the Reorganized Debtor pursuant to the terms of the Plan.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Non-Tax Claim** shall mean a Claim entitled to priority pursuant to §§507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code.

**Priority Tax Claim** shall mean a Claim entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code.

**Professional** shall mean (i) any professional retained in the Chapter 11 Case pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to §1129(a)(4) of the Bankruptcy Code.

**Reorganized Debtor** shall mean VALCAL, Inc. following the Effective Date.

**River Capital** shall mean River Capital Finance, LLC.

**River Capital Collateral** shall mean seven (7) handheld Xebra scanners.

**Rule or Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Sallapudi** shall mean Abishek S Sallapudi

**Sallapudi Collateral** shall mean (i) 2016 Chevrolet Express Work Cutaway Van with VIN # 1GB0GSFF6G1193461; (ii) 2008 Freightliner MT55 Step Van with VIN # 4UZAARDU48CZ58504; (iii) 2011 Freightliner MT55 Step Van with VIN # 4UZAARDU6BCBA7603; (iv) 2012 Freightliner MT55 Step Van with VIN # 4UZAARDU7CCBR1002; (v)

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable nonbankruptcy law. A Secured Claim which is challenged by the Debtor shall only be Allowed to the extent that such claim is deemed to be Allowed in the Plan or the underlying security interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditors Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Secured Rate** shall be 8.0% per annum.

**Security Interest** shall mean "security interest" as defined in § 101(51) of the Code.

**Substantial Consummation** shall be when distribution commences under the Plan.

**Trustee** means the trustee to be appointed in this case pursuant to 11 U.S.C. § 1183 (a).

**Unimpaired Claim** shall mean a Claim that is not impaired within the meaning of §1124 of the Bankruptcy Code.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21, located in the Middle District of Florida, Orlando, Florida.

**Unsecured Claim** shall mean a Claim other than an Administrative Expense, a Priority Non-Tax Claim, a Priority Tax Claim, a Secured Claim, or an Equity Interest.

**Vivian** shall mean Vivian Capital Group, LLC.

**Vivian Collateral** shall mean all tangible and intangible property of the Debtor, not including amounts in bank accounts and motor vehicles.

**WCR** shall mean Working Capital Reserve. The WCR is $75,000.00.

**B.     Bankruptcy Code Definitions**

Definitions in the Bankruptcy Code and Bankruptcy Rules shall be applicable to the Plan unless otherwise defined in the Plan. The rules of construction in Bankruptcy Code §102 shall apply to the Plan.

**C.     Undefined Terms**

A term used in the Plan and not defined herein has the meaning ascribed to such term in the Bankruptcy Code or Rules.

**D.     Interpretation**

Unless otherwise specified, all sections, articles and exhibits referenced in the Plan are to the respective sections in, articles of, or exhibits to, the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan and the Disclosure Statement shall not be construed as a stipulation or admission, but rather, as a statement made in settlement negotiations. Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or in the Bankruptcy Rules, as the case may be, the Bankruptcy Code or the Bankruptcy Rules definition will be controlling in the case of a conflict or ambiguity.

## ARTICLE II –CLASSIFICATION OF CLAIMS AND INTERESTS

### A. General Rules of Classification

Generally, a Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of the Class and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class. If a Claim qualifies for inclusion in a more specifically defined Class, then the Claim shall be included only in the more specifically defined Class. Notwithstanding anything contained herein to the contrary, if a Claim is not allowed, then the Debtor is not bound by a classification made or implied herein.

### B. Classifications

All Claims and Interests treated under Articles III - V of the Plan are divided into the following classes, which shall be mutually exclusive:

#### Class 1 – Allegiant (8553)

Class 1 consists of the Secured Claim of Allegiant. This Claim is secured by a lien on the Allegiant Collateral (8553) that certain 2021 Ford Cutaway E450, VIN#1FDXE4FN0MDC36121. The Class 1 Secured Claim is $35,000.00. This Class is Impaired.

#### Class 2 – Allegiant (8554)

Class 2 consists of the Secured Claim of Allegiant. This Claim is secured by a lien on the Allegiant Collateral (8554) that certain. 2021 Ford Cutaway E450, VIN1FDXE4FN2NDC01548. The Class 2 Secured Claim is 39,000.00. This Class is Impaired.

#### Class 3- Allegiant (8399)

Class 3 consists of the Secured Claim of Allegiant. This Claim is secured by a lien on the Allegiant Collateral (8399) that certain 2022 Ford Cutaway E450, VIN#1FDXE4FNXN0C13916. The Class 3 Secured Claim is $39,000.00. This Class is Impaired.

#### Class 4- Allegiant (7877)

Class 4 consists of the Secured Claim of Allegiant. This Claim is secured by a lien on the Allegiant Collateral (7877) that certain 2021 Ford P1000, VIN: 1F65F5KNXM0A09680. The Class 4 Secured Claim is $42,000.00. This Class is Impaired.

### Class 5- Allegiant (7579)

Class 5 consists of the Secured Claim of Allegiant. This Claim is secured by a lien on the Allegiant Collateral (7579) that certain 2021 Ford P1000, VIN: 1F65F5KNXM0A09663. The Class 5 Secured Claims is $42,000.00. This Class is Impaired.

### Class 6- Ascentium (1380)

Class 6 consists of the Secured Claim of Ascentium. This Claim is secured by a lien on the Ascentium Collateral (1380) consisting of Ground cloud cameras. The Class 6 Secured Claim is $8,000.00. This Class is Impaired.

### Class 7- Ascentium (9886)

Class 7 consists of the Secured Claim of Ascentium. This Claim is secured by a lien on the Ascentium Collateral (9886) consisting of handheld Xebra scanners. The Class 7 Secured Claim is $5,400.00. This Class is Impaired.

### Class 8- Bush (6646)

Class 8 consists of the Secured Claim of Bush. This Claim is secured by a lien on the Bush Collateral (6646) that certain 2022 Freightliner P1200, VIN: 4UZAC3GA3NCNP6646. The Class 8 Secured Claim is $60,000.00. This Class is Impaired.

### Class 9- Bush (9636)

Class 9 consists of the Secured Claim of Bush. This Claim is secured by a lien on the Bush Collateral (9636) that certain 2022 Freightliner P1200, VIN: 4UZAC3GA8NCNM9636. The Class 9 Secured Claim is $60,000.00. This Class is Impaired.

### Class 10- Bush (9638)

Class 10 consists of the Secured Claim of Bush. This Claim is secured by a lien on the Bush Collateral (9638) that certain 2022 Freightliner P1200, VIN: 4UZAC3GA1NCNM9638. The Class 10 Secured Claim is $60,000.00. This Class is Impaired.

### Class 11- Bush (9637)

Class 11 consists of the Secured Claim of Bush. This Claim is secured by a lien on the Bush Collateral (9637) that certain 2022 Freightliner P1200, VIN: 4UZAC3GAXNCNM9637. The Class 11 Secured Claim is $60,000.00. This Class is Impaired.

### Class 12- Bush (6645)

Class 12 consists of the Secured Claim of Bush. This Claim is secured by a lien on the Bush Collateral (6645) that certain 2022 Freightliner R1200, VIN: 4UZAC3GAINCNP6645. The Class 12 Secured Claim is $60,000.00. This Class is Impaired.

### Class 13- Channel Partners

Class 13 consists of the Secured Claim of Channel Partners.  This Claim is secured by a lien on the Channel Partners Collateral, that certain 2015 Ford F750, VIN: 3FRNF7FA6FV745724. The Class 13 Secured Claim is $42,000.00. This Class is Impaired.

### Class 14- Credibly
Class 14 consists of the Secured Claim of Credibly.  This Claim is secured by a lien on the Credibly Collateral. The Class 14 Secured Claim is $28,600.00. This Class is Impaired.

### Class 15- Financial Pacific ((7-302)
Class 15 consists of the Secured Claim of Financial Pacific.  This Claim is secured by a lien on the Financial Pacific Collateral (7-302), that certain 2021 Ford P1000, VIN:1F65F5KNZMOA10869. The Class 15 Secured Claim is $45,000.00. This Class is Impaired,

### Class 16- Financial Pacific (7-301)
Class 16 consists of the Secured Claim of Financial Pacific.  This Claim is secured by a lien on the Financial Pacific Collateral (7-301), that certain 2006 Freightliner P1200, VIN: 4UZAARBW76CW98861. The Class 16 Secured Claim is $17,500.00. This Class is Impaired.

### Class 17- Leaf
Class 17 consists of the Secured Claim of Leaf.  This Claim is secured by a lien on the Leaf Collateral, that certain 2023 Ford E350, VIN:1FDWE3FKXPDD16865. The Class 17 Secured Claim is $56,000.00. This Class is Impaired.

### Class 18- North Mill
Class 18 consists of the Secured Claim of North Mill.  This Claim is secured by a lien on the North Mill Collateral, that certain 2014 Freightliner P1200, VIN: 4UZAAPDU8ECFP2252. The Class 18 Secured Claim is $21,000.00. This Class is Impaired.

### Class 19- Oakmont (1049)
Class 19 consists of the Secured Claim of Oakmont.  This Claim is secured by a lien on the Oakmont Collateral (1049), that certain 2005 Freightliner MT45, P1200, VIN: 4UZAAPBW15CV02383; that certain 2011 Freightliner MT55, P1100, VIN: 4UZAAPDU4BCAY0653; and that certain 2013 Ford P1000, VIN: 1F66F5KY5DOAO4742. The Class 19 Secured Claim is $58,500.00. This Class is Impaired,

### Class 20- River Capital
Class 20 consists of the Secured Claim of River Capital.  This Claim is secured by a lien on the River Capital Collateral, seven (7) handheld Xebra scanners. The Class 20 Secured Claim is $3,150.00. This Class is Impaired.

### Class 21 – Sallapudi
Class 21 consists of the Secured Claim of Sallapudi. This Claim is secured by a lien on the Sallapudi Collateral. The Class 21 Secured Claim is $103,000.00. This Class is Impaired.

<u>Class 22 – General Unsecured Claims</u>

Class 22 consists of the Allowed Unsecured Claims against the Debtor. This Class is Impaired.

<u>Class 23 – VALCAL, Inc. Equity Interests</u>

Class 23 consists of any and all equitable interests and warrants currently issued or authorized in the Debtor. This Class is Unimpaired.

## **ARTICLE III – ADMINISTRATIVE EXPENSES**

**A.     Administrative Claims**

**1.     Nonordinary Course Administrative Claims**

a.     Any person, including any professional, including the Subchapter V Trustee, who has rendered services to the Debtor during the course of this Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under § 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed *infra*, shall, on or before the Administrative Claims Bar date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of any basis for such Claim; provided, however, that applicants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to timely file an application, motion, or request for allowance pursuant to this Section by any holder of Nonordinary Course Administrative Expense Claim shall bar such claimant from seeking recovery on such Claim.

b.     Each holder of a Nonordinary Course Administrative Claim of the Debtor shall be paid by the Debtor one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on or before the Effective Date or such later date as may be agreed to by such holder, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. Debtor's cash on hand as of the Effective Date shall be first used to pay Nonordinanry Course Administrative Claims. However, nothing in this provision of the Plan shall preclude the Debtor from paying any holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim holder consents to different payment terms.

**2.     Ordinary Course Administrative Claims**

Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Debtor in accordance with the terms and conditions of the agreement or applicable law giving rise thereto. An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

### B.    Priority Tax Claims

Except to the extent that the Holder and the Debtor have agreed or may agree to a different treatment, each holder of an Allowed Priority Tax Claim[1] against the Debtor shall receive on account of such Claim, the amount of such Holder's Allowed Claim in accordance with § 1129(a)(9)(c) of the Code, which will be paid based on a five (5) year amortization and maturity from the petition date with payments made monthly. Holders of Allowed Secured Tax Claims shall receive interest at the statutory rate. Payments will commence on the later of the Effective Date or on such date as a respective Priority Tax Claim becomes Allowed.

## ARTICLE IV – TREATMENT OF UNIMPAIRED CLASSES

### Class 23 – VALCAL, Inc. Equity Interests
Class 23 consists of any and all equitable interests and warrants currently issued or authorized in the Debtor. This Class is Unimpaired.

Holders of a Class 23 interests shall retain their full equity interest in the same amounts, percentages, manner and structure as existed on the Petition Date.

## ARTICLE V – TREATMENT OF IMPAIRED CLASSES OF CLAIMS

### A.    Determination of Allowed Amounts
Treatment prescribed for Claims and Interests in the following sections of Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the date on which the Plan provides for a Distribution to be made on account of such Claim, then no Distribution on account of such Claim shall be made until the Claim becomes an Allowed Claim. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other relief, equitable or otherwise. The Reorganized Debtor will be responsible for all Claim objections, and all such objections will be filed on or before the Claims Objection Bar Date. Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction to adjudicate any objections to Claims filed on or before the Claims Objection Bar Date.

### B.    Impairment/Classification Controversies
If there is a controversy regarding the classification or impairment of a Claim or Interest, then such controversy shall be determined by the Bankruptcy Court after notice and a hearing.

### Class 1 – Allegiant (8553)

---

[1] Any difference between the amount of the Allowed Priority Tax Claim and the Allowed Claim that does not qualify for priority treatment under 11 U.S.C. 507(a)(8) shall be treated as a Class 22 General Unsecured Claim.

Class 1 consists of the Secured Claim of Allegiant. This Claim is secured by a lien on the Allegiant Collateral (8553) that certain 2021 Ford Cutaway E450, VIN#1FDXE4FN0MDC36121. The Class 1 Secured Claim is $35,000.00.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $35,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $709.67, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 2 – Allegiant (8554)

Class 2 consists of the Secured Claim of Allegiant. This Claim is secured by a lien on the Allegiant Collateral (8554) that certain. 2021 Ford Cutaway E450, VIN1FDXE4FN2NDC01548. The Class 2 Secured Claim is 39,000.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $39,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $790.78, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 3- Allegiant (8399)

Class 3 consists of the Secured Claim of Allegiant. This Claim is secured by a lien on the Allegiant Collateral (8399) that certain 2022 Ford Cutaway E450, VIN#1FDXE4FNXN0C13916. The Class 3 Secured Claim is $39,000.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $39,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $790.78, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 4- Allegiant (7877)

Class 4 consists of the Secured Claim of Allegiant. This Claim is secured by a lien on the Allegiant Collateral (7877) that certain 2021 Ford P1000, VIN: 1F65F5KNXM0A09680. The Class 4 Secured Claim is $42,000.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $42,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $851.61, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest rate set forth the Secured Rate. This claim shall be paid directly by the Debtor.

**Class 5- Allegiant (7579)**

Class 5 consists of the Secured Claim of Allegiant. This Claim is secured by a lien on the Allegiant Collateral (7579) that certain 2021 Ford P1000, VIN: 1F65F5KNXM0A09663. The Class 5 Secured Claims is $42,000.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $42,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $851.61, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

**Class 6- Ascentium (1380)**

Class 6 consists of the Secured Claim of Ascentium. This Claim is secured by a lien on the Ascentium Collateral (1380) consisting of Ground cloud cameras. The Class 6 Secured Claim is $8,000.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $8,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $162.21, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

**Class 7- Ascentium (9886)**

Class 7 consists of the Secured Claim of Ascentium. This Claim is secured by a lien on the Ascentium Collateral (9886) consisting of handheld Xebra scanners. The Class 7 Secured Claim is $5,400.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $5,400.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $109.49, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 8- Bush (6646)

Class 8 consists of the Secured Claim of Bush. This Claim is secured by a lien on the Bush Collateral (6646) that certain 2022 Freightliner P1200, VIN: 4UZAC3GA3NCNP6646. The Class 8 Secured Claim is $60,000.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $60,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $1,216.58, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 9- Bush (9636)

Class 9 consists of the Secured Claim of Bush. This Claim is secured by a lien on the Bush Collateral (9636) that certain 2022 Freightliner P1200, VIN: 4UZAC3GA8NCNM9636. The Class 9 Secured Claim is $60,000.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $60,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $1,216.58, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 10- Bush (9638)

Class 10 consists of the Secured Claim of Bush. This Claim is secured by a lien on the Bush Collateral (9638) that certain 2022 Freightliner P1200, VIN: 4UZAC3GA1NCNM9638. The Class 10 Secured Claim is $60,000.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $60,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $1,216.58, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 11- Bush (9637)

Class 11 consists of the Secured Claim of Bush.  This Claim is secured by a lien on the Bush Collateral (9637) that certain 2022 Freightliner P1200, VIN: 4UZAC3GAXNCNM9637. The Class 11 Secured Claim is $60,000.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $60,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $1,216.58, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 12- Bush (6645)

Class 12 consists of the Secured Claim of Bush.  This Claim is secured by a lien on the Bush Collateral (6645) that certain 2022 Freightliner R1200, VIN: 4UZAC3GAINCNP6645. The Class 12 Secured Claim is $60,000.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $60,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $1,216.58, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 13- Channel Partners

Class 13 consists of the Secured Claim of Channel Partners. This Claim is secured by a lien on the Channel Partners Collateral, that certain 2015 Ford F750, VIN: 3FRNF7FA6FV745724. The Class 13 Secured Claim is $42,000.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $42,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $851.61, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 14- Credibly

Class 14 consists of the Secured Claim of Credibly. This Claim is secured by a lien on the Credibly Collateral. The Class 14 Secured Claim is $28,600.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $28,600.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $579.90, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 15- Financial Pacific ((7-302)

Class 15 consists of the Secured Claim of Financial Pacific. This Claim is secured by a lien on the Financial Pacific Collateral (7-302), that certain 2021 Ford P1000, VIN:1F65F5KNZMOA10869. The Class 15 Secured Claim is $45,000.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $45,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of 912.44, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 16- Financial Pacific (7-301)

Class 16 consists of the Secured Claim of Financial Pacific. This Claim is secured by a lien on the Financial Pacific Collateral (7-301), that certain 2006 Freightliner P1200, VIN: 4UZAARBW76CW98861. The Class 16 Secured Claim is $17,500.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $17,500.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of 354.84, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 17- Leaf

Class 17 consists of the Secured Claim of Leaf. This Claim is secured by a lien on the Leaf Collateral, that certain 2023 Ford E350, VIN:1FDWE3FKXPDD16865. The Class 17 Secured Claim is $56,000.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $56,000.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $1,135.48, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 18- North Mill

Class 18 consists of the Secured Claim of North Mill. This Claim is secured by a lien on the North Mill Collateral, that certain 2014 Freightliner P1200, VIN: 4UZAAPDU8ECFP2252. The Class 18 Secured Claim is $21,000.00. This Class is Impaired.

In full satisfaction of North Mill's Secured Claim, the North Mill Collateral shall be surrendered as the indubitable equivalent of North Mill's Class 18 Secured Claim.

### Class 19- Oakmont (1049)

Class 19 consists of the Secured Claim of Oakmont. This Claim is secured by a lien on the Oakmont Collateral (1049), that certain 2005 Freightliner MT45, P1200, VIN: 4UZAAPBW15CV02383; that certain 2011 Freightliner MT55, P1100, VIN: 4UZAAPDU4BCAY0653; and that certain 2013 Ford P1000, VIN: 1F66F5KY5DOAO4742. The Class 19 Secured Claim is $58,500.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of

the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $58,500.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $1,186.17, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 20- River Capital

Class 20 consists of the Secured Claim of River Capital. This Claim is secured by a lien on the River Capital Collateral, seven (7) handheld Xebra scanners. The Class 20 Secured Claim is $3,150.00. This Class is Impaired.

To the extent that the claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the claim to the extent of the allowed amount of the claim; and (ii) receive on account of such claim deferred cash payments totaling at least the allowed amount of the claim, of a value, as of the Effective Date of at least the value of the claimant's interest in the estate's interest in the property securing the claim. Debtor is filing a separate motion to determine the amount of the secured claim. Debtor contends the value of the collateral and therefore the allowed amount of the secured claim is $3,150.00. The Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest of $63.87, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the Secured Rate. This claim shall be paid directly by the Debtor.

### Class 21 – Sallapudi

Class 21 consists of the Secured Claim of Sallapudi. This Claim is secured by a lien on the Sallapudi Collateral. The Class 21 Secured Claim is $103,000.00. This Class is Impaired.

In full satisfaction of Sallapudi's Secured Claim, the Sallapudi Collateral shall be surrendered as the indubitable equivalent of Sallapudi's Class 21 Secured Claim.

### Class 24 – General Unsecured Claims

Class 24 consists of the Allowed Unsecured Claims against the Debtor. This Class is Impaired.

a.      **Consensual Plan Treatment:**

The liquidation value or amount that unsecured creditors would receive in a hypothetical chapter 7 case is approximately $0.00. Accordingly, the Debtor proposes to pay unsecured creditors a *pro rata* portion of $18,000.00. Payments will be made in equal quarterly payments totaling $1,500.00. Payments shall commence on the fifteenth day of the month, on the first month that begins more than ninety days after the Effective Date and shall continue quarterly for eleven additional quarters. Pursuant to §1191, the value to be distributed to unsecured creditors is greater than the Debtor's projected disposable income to be received in the 3-year period beginning on the date that the first payment is due under the plan.

If the Debtor defaults in making a quarterly payment and fails to cure the payment default before the following quarter's payment is due, then the Debtor shall liquidate nonexempt assets to pay the holders of allowed unsecured claims.

**b.    Nonconsensual Plan Treatment:**

The liquidation value or amount that unsecured creditors would receive in a hypothetical chapter 7 case is approximately $0.00. Accordingly, the Debtor proposes to pay unsecured creditors a *pro rata* portion of its Disposable Income. If the Debtor remains in possession, plan payments shall include the Subchapter V Trustee's administrative fee which will be billed hourly at the Subchapter V Trustee's then current allowable blended rate, which shall not exceed the Disposable Income. Plan Payments shall commence on the fifteenth day of the month, on the first month that is ninety days after the Effective Date and shall continue quarterly for eleven additional quarters. The initial estimated quarterly payment shall be $0.00.

If the Debtor defaults in making a quarterly payment and fails to cure the payment default before the following quarter's payment is due, then the Debtor shall liquidate nonexempt assets to pay the holders of allowed unsecured claims.

## ARTICLE VI – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

If the Bankruptcy Court has not previously entered an order approving assumption, rejection and/or assignment of leases and executory contracts, then the Confirmation Order shall constitute an order of the Bankruptcy Court approving all such assumptions, assignments, and rejections of executory contracts and unexpired leases as of the Petition Date, unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease. The Debtor and Reorganized Debtor intends to assume the executory contracts with all vendors and FedEx.

If an executory contract or unexpired lease is assigned, then the other party to the agreement may file a Claim for damages incurred by reason of the assignment within such time as the Bankruptcy Court may allow or be forever barred. Such Claim shall be served upon the Debtor.  In the case of rejection of leases of real property, damages are limited under the Bankruptcy Code. Such claims shall be deemed to be Class 24 General Unsecured Claims. The Plan shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

To the extent any indemnification obligation of the Debtor (whether pursuant to its charter, by-laws, agreement, or to law) existing as of the Petition Date to any current or former, officer, director or employee of the Debtor constitutes an executory contract, the Debtor shall be deemed to have rejected such contract immediately before the Petition Date pursuant to §365 of the Bankruptcy Code.

## ARTICLE VII – MEANS OF PLAN IMPLEMENTATION

**A.    Continued Corporate Existence**

The Debtor shall continue to exist as the Reorganized Debtor, doing business under the name Valcal, Inc.. The Reorganized Debtor's officers, directors and administrative structure shall be as follows:

1. **Administrative Structure**
   The following is a breakdown of the existing administrative structure:
   a. Officers
      a. Giovanni Martinez
   b. Employees
   c. Contract labor.

The above listed administrative structure will continue to operate the Reorganized Debtor and will supervise the business operations of the Debtor.

2. **Officers**
   The Officers of the Reorganized Debtor shall remain the same as the Officers of the Debtor. The Officers shall have broad authority with respect to the conduct of the business of the Reorganized Debtor, including the right and power to enter into agreements regarding project bidding, vendor and sub-contractor selection, to borrow money to pay obligations, and to exercise all other specific powers described in the Reorganized Debtor's bylaws.

**B.** **Articles of Incorporation and Bylaws**
   The Articles of Incorporation and Bylaws of the Debtor will be amended, as necessary, to include provisions required (a) under the Bankruptcy Code with respect to the Reorganized Debtor's equity interests and (b) the provisions of the Debtors' Plan. Consistent with Section 1123(a)(6) of the Bankruptcy Code, the Reorganized Debtor's Articles shall, among other things, prohibit the issuance of nonvoting equity securities as part of the reorganization. The Articles of Incorporation and Bylaws of the Reorganized Debtor shall be amended as necessary for the purpose of consummating and implementing the transactions and acts contemplated by this plan. The Confirmation Order shall include appropriate language approving the Reorganized Debtor's Articles of Incorporation and Bylaws. The Reorganized Debtor's amended Articles of Incorporation and Bylaws shall be the Articles and Bylaws governing the Reorganized Debtor on and after the Effective Date.

**C.** **Means for Implementing Plan**

1. **Business Operations and Cash flow**
   The Plan contemplates that the Reorganized Debtor will continue to operate the Debtor's business.

2. **Funds Generated During Chapter 11**
   Except as explicitly set forth in this Plan, all cash in excess of operating expenses generated from operation until the Effective Date will be used for Plan Payments or Plan implementation, cash on hand as of Confirmation shall be available for Administrative Expenses.

3. **Section 1146 Exemption**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

4. **Employment of Professionals Post-Confirmation**

After the Effective Date, the Reorganized Debtor may retain professionals on such terms as the Reorganized Debtor deems reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtors prior to the Effective Date may also continue to serve the Reorganized Debtor.

D. **Limitations of Liability**

The Debtor, and the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this plan, shall have no liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the initial Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document relating to, rising out of or in connection with the Plan, unless the liability of any entity that would otherwise result from any such act or omission was the result of gross negligence, fraud, or willful misconduct .

E. **Termination of service of Subchapter V Trustee**

1. **Consensual Plan:**

When the court confirms a consensual plan under Section 1191(a), the trustee's service terminates upon Substantial Consummation.

2. **Non-Consensual Plan:**

When the court confirms a non-consensual plan under the cramdown provisions of Section 1191(b), the trustee's service shall not terminate until all payments pursuant to the Plan and Section 1194 are made.

3. **Dismissal or Conversion**

Termination of the service of the Subchapter V Trustee shall occur upon dismissal of the case or its conversion to another chapter.

## ARTICLE VIII – PROVISIONS GOVERNING DISTRIBUTION

A. **Cash Payments**

Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn against a domestic bank, or by wire transfer from a domestic bank.

B. **Delivery of Distributions**

Distributions and deliveries to Holders of Allowed Claims and Interests shall be made at the addresses set forth on the proofs of Claim or Interest filed by such Holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if the Debtor or Reorganized Debtor have been notified of a change of address). If any distribution to a Holder is returned as undeliverable, then no further distributions to such Holder shall be made unless and until the Debtor or Reorganized Debtor are notified of the Holder's then-current address, at which time all missed distributions shall be made to such Holder, without interest. All Claims for undeliverable distributions shall be made on or before the first anniversary of the Distribution Date. After such date, all unclaimed property shall revert to the Debtor or Reorganized Debtor, and the claim of any Holder with respect to such property shall be discharged and forever barred.

C.     **Time Bar to Cash Payments**

Checks issued by the Debtor or Reorganized Debtor with respect to Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for re-issuance of any checks shall be made directly to the Debtor or Reorganized Debtor by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim with respect to such a voided check shall be made on or before the later of the first anniversary of the Distribution Date or ninety (90) days after the date of issuance of such check. After such date, all Claims with respect to void checks shall be discharged and forever barred.

D.     **Transfer of Claim**

In the event that the Holder of any Claim shall transfer such Claim on or after the Effective Date, the Holder shall immediately notify the Reorganized Debtor in writing of such transfer and provide sufficient written evidence of the transfer. The Reorganized Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Reorganized Debtor has received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver, or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice thereafter shall be vested with all rights and powers of the transferor under the Plan.

## ARTICLE IX – PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

A.     **Objection Deadline**

Unless extended by the Bankruptcy Court, the Debtor and the Reorganized Debtor shall file any objections to Claims or Interest no later than sixty (60) days after the Confirmation Date.

B.     **Prosecution of Objections**

The Debtor and the Reorganized Debtor shall have authority to file objections, litigate to judgment, settle, or withdraw objections to Disputed Claims or Interests. All professional fees and expenses incurred by the Debtor or Reorganized Debtor from and after the Confirmation Date shall be paid as provided in Article III hereof.

### C.     No Distributions Pending Allowances

No payments or distributions shall be made with respect to any Disputed Claim or Interest unless and until all objections to such Claim or Interest are resolved and such Claim becomes an Allowed Claim or Interest.

### D.     Escrow of Allocated Distributions

The Debtor shall withhold from the property to be distributed under the Plan, and shall place in escrow, amounts sufficient to be distributed on account of Contested Claims. As to any Contested Claim, upon a request for estimation by the Debtor, the Bankruptcy Court shall determine what amount is sufficient to withhold in escrow pending Disallowance of the Claim. The Debtor shall also place in escrow any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld in escrow pursuant hereto, to the extent such property continues to be withheld in escrow at the time such distributions are made, or such obligations arise.  If practicable, Debtor may invest any cash it has withheld in escrow in a manner that will yield a reasonable net return, taking into account the safety of the investment.

### E.     Distributions After Allowance

Payments and distributions from escrow to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective holder belongs. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, any property in escrow that would have been distributed prior to the date on which a Disputed Claim become an Allowed Claim shall be distributed, together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property from the date such distributions would have been due had such Claim then been an Allowed Claim to the date such distributions are made.

### F.     Distributions After Disallowance

If any property withheld in escrow remains after all objections to Disputed Claims of a particular Class have been resolved, then such remaining property, to the extent attributable to the Disputed Claims, shall be distributed as soon as practicable in accordance with the provisions of the Plan governing the Class of Claims or Interest to which the Disallowed Claim or Interest belong.

## ARTICLE X – DISCHARGE

### A.     Consensual Plan:

If the Debtor's Plan is confirmed under § 1191(a), the Debtor shall receive a discharge under § 1141(d)(1)(A) upon confirmation.

### B.     Non-Consensual Plan:

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion

of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

        1.      on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

        2.      excepted from discharge under§ 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE XI– RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction to the extent allowed under applicable law until administrative closure of the bankruptcy case, subject to reopening.

## ARTICLE XII – MISCELLANEOUS

**A.**    **Modification of the Plan**

Pursuant to 11 U. S. C. §1193(a) the Debtor reserves the right to modify the Plan at any time before confirmation, provided that the plan, as modified, meeting the requirement of sections 1122 and 1123 of this title, with the exception of subsection (a)(8) of section 1123. After any modification is filed with the court, the plan as modified becomes the Plan.

**B.**    **Confirmation Order and Plan Control**

To the extent that the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any other orders of the Bankruptcy Court) shall be construed together with the terms of the Plan.

**C.**    **Governing Law**

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provide otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**D.**    **No Admissions**

Nothing herein shall be construed to be an admission of any fact by the Debtor or otherwise binding upon the Debtor in any manner prior to the Effective Date.

**E.**    **Revocation or Withdrawal of the Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to: (a) constitute a waiver or release of any Claims by or against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

**F.     Further Assurances**

The Debtor or the Reorganized Debtor (as the case may be) agree, and is/are hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements, and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

**G.     Notices**

All notices, requests, or other documents in connection with, or required to be served by the Plan shall be in writing and shall be sent by United States Mail, postage prepaid, or by overnight delivery by a recognized courier service to the following:

Counsel for the Debtor and Reorganized Debtor:

Jeffrey S. Ainsworth, Esquire
1501 East Concord Street
Orlando, Florida 32803

Debtor and Reorganized Debtor:

Valcal, Inc.
Attn: Giovanni Martinez
309 Cranes Roost Boulevard
Suite 2000
Altamonte Springs, Florida 32701

United States Trustee:

Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida 32801

Subchapter V Trustee:

Aaron R. Cohen, Esquire
P.O. Box 4218
Jacksonville, FL 32201

**H.     Estimated Claims**

To the extent any Claim is estimated for any purpose other than for voting, then in no event shall such Claims be Allowed in an amount Greater than the estimated amount.

**I.     Consent to Jurisdiction**

Except to the extent that any agreement, including any loan-related document emanating from this Plan provides for jurisdiction in another forum, upon any default under the

Plan, the Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions contemplated by this Plan, consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default.

By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by voting on the Plan, or by entering an appearance in the Chapter 11 Case, all Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors, and foreign parties in interest, have consented and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Chapter 11 Case, including the matters and purposes set forth in Article II of the Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article II of the Plan.

### J. Modification of Payment Terms

The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in §1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon consent of the Holder of such Allowed Claim.

### K. Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Reorganized Debtor in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all Distribution, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

### L. Distribution of Unclaimed Property

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan, which is unclaimed after six months following the relevant distribution date shall be forfeited and such distribution together with all interest earned thereon shall become an Asset of the Reorganized Debtor.

### M. Duty to Timely Provide Financial Documents if Plan confirmed by § 1191(b)

The Debtor shall provide financial documents including tax returns, or other financial information requested by the Subchapter V Trustee.

### N. Chapter 11 Post-Confirmation Quarterly Operation Report

**1.**     **Consensual Plan**

         If the Debtor's Plan is confirmed under § 1191(a), the Debtor shall file the Chapter 11 Post-Confirmation Quarterly Operating Report.

**2.**     **Non-Consensual Plan**

         If the Debtor's Plan is confirmed under § 1191(b), the Debtor shall file the Chapter 11 Post-Confirmation Quarterly Operating Report.

Dated: July 31, 2023

/s/ Jeffrey S. Ainsworth_____
Jeffrey S. Ainsworth, Esquire
Fla. Bar No.: 060769
E-mail: *jeff@bransonlaw.com*
Jacob D. Flentke, Esquire, of Counsel
Florida Bar No.: 25482
E-mail: *jacob@bransonlaw.com*
**BransonLaw, PLLC**
1501 E. Concord Street
Orlando, Florida 32803
Telephone (407) 894-6834
Fax (407) 894-8559
Attorney for Debtor

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| **In re:** | **Case No.: 6:23-bk-01675-TPG** |
| | **Chapter 11** |
| **VALCAL INC.,** | **Subchapter V** |
| | **EIN: 85-1773435** |
| **Debtor.** | |
| _____/ | |

## LIQUIDATION ANALYSIS

As part of the Chapter 11 confirmation process, Section 1129(a)(7) of the Bankruptcy Code requires that each holder of a claim or an equity interest in each respective class either (i) has accepted the plan or (ii) will receive under the plan value that is not less than the amount that such holder would receive if the debtors had liquidated under chapter 7 of the Bankruptcy Code (the "Liquidation Analysis").

Below is a summary of an illustrative Liquidation Analysis showing the estimated anticipated distribution creditors would receive in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code. Under Chapter 7 of the Bankruptcy Code, the Debtor's assets would be liquidated by a Chapter 7 trustee with Court supervision. As demonstrated below, the hypothetical sale proceeds in such a liquidation would provide for lower recoveries as compared to the recoveries under the Plan, and as a result the Debtors believe that, under the Plan, Holders of Claims would receive value greater than the amounts that such Holders would receive if the Debtors were forced to liquidate under chapter 7 of the Bankruptcy Code, and therefore the Plan satisfies the "best interests" test of Section 1129(a)(7) of the Bankruptcy Code

### Limitations and Key Assumptions Underlying the Hypothetical Liquidation

**THE HYPOTHETICAL LIQUIDATION ANALYSIS PRESENTED HEREIN HAS BEEN PREPARED SOLELY FOR ILLUSTRATIVE PURPOSES AND DOES NOT REPRESENT OR CLAIM TO REPRESENT ANY ASSUMPTIONS OR COMPARISONS FOR ANY OTHER PURPOSE. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION BY OR ADMISSION OF ANY DEBTOR FOR ANY PURPOSE**.

| **Assets** | **Estimated Liquidation Value as of July 31, 2023** |
|---|---|
| Cash, cash equivalents, and financial assets | $5,900.76 |

| | |
|---|---|
| Real Property | $0.00 |
| Office furniture, fixtures, and equipment | $18,600.00 |
| Machinery, equipment, and vehicles | $911,000.00 |
| Accounts receivable | $0.00 |
| Other Assets (Agreement to purchase vehicle) | $10,000.00 |
| **TOTAL LIQUIDATION VALUE:** | **$945,500.76** |
| | |
| Secured Debt | $1,391,353.55 |
| Administrative (Chapter 7) | $1,250 |
| Priority Debt | $0.00 |
| Administrative (Chapter 11) | $55,000.00 |
| **TOTAL SECURED DEBT AND ADMINISTRATIVE CLAIMS:** | **$1,447,603.55** |
| | |
| **AVAILABLE FOR GENERAL UNSECURED CLAIMS:** | **$0.00** |

# Projections 12 months/

| GROSS RECEIPTS | Sept | Oct | Nov | Dec | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $ 245,000.00 | $ 201,000.00 | $ 235,000.00 | $ 310,000.00 | $ 205,000.00 | $ 190,000.00 | $ 235,000.00 | $ 196,000.00 | $ 245,000.00 | $ 196,000.00 | $ 196,000.00 | $ 245,000.00 | $ 2,699,000.00 |
| (Returns and Allowances) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Gross Sales | $ 245,000.00 | $ 201,000.00 | $ 235,000.00 | $ 310,000.00 | $ 205,000.00 | $ 190,000.00 | $ 235,000.00 | $ 196,000.00 | $ 245,000.00 | $ 196,000.00 | $ 196,000.00 | $ 245,000.00 | $ 2,699,000.00 |
| **COST OF GOODS SOLD** | | | | | | | | | | | | | |
| purchases | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| supplies | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Cost of Goods Sold | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Gross Profit | $ 245,000.00 | $ 201,000.00 | $ 235,000.00 | $ 310,000.00 | $ 205,000.00 | $ 190,000.00 | $ 235,000.00 | $ 196,000.00 | $ 245,000.00 | $ 196,000.00 | $ 196,000.00 | $ 245,000.00 | $ 2,699,000.00 |
| **EXPENSES** | | | | | | | | | | | | | |
| Payroll | $ 165,000.00 | $ 132,000.00 | $ 160,000.00 | $ 190,000.00 | $ 145,000.00 | $ 125,000.00 | $ 155,000.00 | $ 132,000.00 | $ 165,000.00 | $ 132,000.00 | $ 132,000.00 | $ 165,000.00 | $ 1,798,000.00 |
| ADP | $ 1,250.00 | $ 1,000.00 | $ 1,000.00 | $ 1,100.00 | $ 1,000.00 | $ 1,000.00 | $ 1,250.00 | $ 1,000.00 | $ 1,250.00 | $ 1,000.00 | $ 1,000.00 | $ 1,250.00 | $ 13,100.00 |
| Insurance | $ 3,500.00 | $ 2,800.00 | $ 2,800.00 | $ 3,500.00 | $ 2,800.00 | $ 2,800.00 | $ 3,500.00 | $ 2,800.00 | $ 3,500.00 | $ 2,800.00 | $ 2,800.00 | $ 3,500.00 | $ 37,100.00 |
| Worker's Comp | $ 7,500.00 | $ 6,000.00 | $ 7,200.00 | $ 8,300.00 | $ 6,700.00 | $ 5,750.00 | $ 7,000.00 | $ 6,000.00 | $ 7,500.00 | $ 6,000.00 | $ 6,000.00 | $ 7,500.00 | $ 81,450.00 |
| Fuel | $ 33,000.00 | $ 31,000.00 | $ 31,000.00 | $ 45,000.00 | $ 31,000.00 | $ 31,000.00 | $ 31,000.00 | $ 31,000.00 | $ 31,000.00 | $ 27,000.00 | $ 27,000.00 | $ 31,000.00 | $ 380,000.00 |
| Office Supplies | $ 1,500.00 | $ 1,200.00 | $ 2,000.00 | $ 3,000.00 | $ 1,250.00 | $ 500.00 | $ 1,000.00 | $ 500.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,500.00 | $ 16,050.00 |
| Travel & entertainment | $ 500.00 | $ 400.00 | $ 500.00 | $ 1,500.00 | $ 1,000.00 | $ 400.00 | $ 500.00 | $ 650.00 | $ 500.00 | $ 600.00 | $ 500.00 | $ 500.00 | $ 7,550.00 |
| Telephone | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 4,200.00 |
| Tires | $ 4,333.33 | $ 4,333.33 | $ 4,333.33 | $ 4,333.33 | $ 4,333.33 | $ 4,333.33 | $ 4,333.33 | $ 4,333.33 | $ 4,333.33 | $ 4,333.33 | $ 4,333.33 | $ 4,333.33 | $ 51,999.96 |
| Repairs | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 60,000.00 |
| | | | | | | | | | | | | | $ - |
| Total Operating Expenses | $ 221,933.33 | $ 184,083.33 | $ 214,183.33 | $ 262,083.33 | $ 198,433.33 | $ 176,133.33 | $ 208,933.33 | $ 183,633.33 | $ 219,633.33 | $ 180,283.33 | $ 180,183.33 | $ 219,933.33 | $ 2,449,449.96 |
| **Net Operating Income** | $ 23,066.67 | $ 16,916.67 | $ 20,816.67 | $ 47,916.67 | $ 6,566.67 | $ 13,866.67 | $ 26,066.67 | $ 12,366.67 | $ 25,366.67 | $ 15,716.67 | $ 15,816.67 | $ 25,066.67 | $ 249,550.04 |
| Sub V Trustee | $ 1,000.00 | | | | | | | | | | | | $ 1,000.00 |
| Allegian (8553) | $ 709.67 | $ 709.67 | $ 709.67 | $ 709.67 | $ 709.67 | $ 709.67 | $ 709.67 | $ 709.67 | $ 709.67 | $ 709.67 | $ 709.67 | $ 709.67 | $ 8,516.04 |
| Allegiant (8554) | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 9,489.36 |
| Allegian (8399) | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 790.78 | $ 9,489.36 |
| Allegiant (7877) | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 10,219.32 |
| Allegiant (7579) | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 10,219.32 |
| Ascentium (1380) | $ 162.21 | $ 162.21 | $ 162.21 | $ 162.21 | $ 162.21 | $ 162.21 | $ 162.21 | $ 162.21 | $ 162.21 | $ 162.21 | $ 162.21 | $ 162.21 | $ 1,946.52 |
| Ascentium (9886) | $ 109.49 | $ 109.49 | $ 109.49 | $ 109.49 | $ 109.49 | $ 109.49 | $ 109.49 | $ 109.49 | $ 109.49 | $ 109.49 | $ 109.49 | $ 109.49 | $ 1,313.88 |
| Bush (6646) | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 14,598.96 |
| Bush (9636) | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 14,598.96 |
| Bush (9637) | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 14,598.96 |
| Bush (9638) | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 14,598.96 |
| Bush (6645) | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 1,216.58 | $ 14,598.96 |
| Channel Partners | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 851.61 | $ 10,219.32 |
| Credibly | $ 579.90 | $ 579.90 | $ 579.90 | $ 579.90 | $ 579.90 | $ 579.90 | $ 579.90 | $ 579.90 | $ 579.90 | $ 579.90 | $ 579.90 | $ 579.90 | $ 6,958.80 |
| Financial Pacific (7-302) | $ 912.44 | $ 912.44 | $ 912.44 | $ 912.44 | $ 912.44 | $ 912.44 | $ 912.44 | $ 912.44 | $ 912.44 | $ 912.44 | $ 912.44 | $ 912.44 | $ 10,949.28 |
| Financial Pacific (7-301) | $ 354.84 | $ 354.84 | $ 354.84 | $ 354.84 | $ 354.84 | $ 354.84 | $ 354.84 | $ 354.84 | $ 354.84 | $ 354.84 | $ 354.84 | $ 354.84 | $ 4,258.08 |
| Leaf | $ 1,135.48 | $ 1,135.48 | $ 1,135.48 | $ 1,135.48 | $ 1,135.48 | $ 1,135.48 | $ 1,135.48 | $ 1,135.48 | $ 1,135.48 | $ 1,135.48 | $ 1,135.48 | $ 1,135.48 | $ 13,625.76 |
| Oakmont (1049) | $ 1,186.17 | $ 1,186.17 | $ 1,186.17 | $ 1,186.17 | $ 1,186.17 | $ 1,186.17 | $ 1,186.17 | $ 1,186.17 | $ 1,186.17 | $ 1,186.17 | $ 1,186.17 | $ 1,186.17 | $ 14,234.04 |
| River Capital | $ 63.87 | $ 63.87 | $ 63.87 | $ 63.87 | $ 63.87 | $ 63.87 | $ 63.87 | $ 63.87 | $ 63.87 | $ 63.87 | $ 63.87 | $ 63.87 | $ 766.44 |
| General Unsecured | | $ 1,500.00 | | | $ 1,500.00 | | | $ 1,500.00 | | | $ 1,500.00 | | $ 6,000.00 |
| Administrative Claims | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 24,000.00 |
| Total Debt Service | $ 18,433.36 | $ 18,933.36 | $ 17,433.36 | $ 17,433.36 | $ 18,933.36 | $ 17,433.36 | $ 17,433.36 | $ 18,933.36 | $ 17,433.36 | $ 17,433.36 | $ 18,933.36 | $ 17,433.36 | $ 216,200.32 |
| **NET BUSINESS INCOME (LOSS)** | $ 4,633.31 | $ (2,016.69) | $ 3,383.31 | $ 30,483.31 | $ (12,366.69) | $ (3,566.69) | $ 8,633.31 | $ (6,566.69) | $ 7,933.31 | $ (1,716.69) | $ (3,116.69) | $ 7,633.31 | $ 33,349.72 |